## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## 1:22-cv-990

| | |
|---|---|
| HARVEY L. DAVIS, on behalf of the Old Dominion 401(k) Retirement Plan, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OLD DOMINION FREIGHT LINE, INC., <br><br> Defendant. | **CLASS ACTION COMPLAINT** |

On behalf of the Old Dominion 401(k) Retirement Plan ("Plan"), Harvey L. Davis ("Plaintiff") on behalf of himself and the Plan, files this Class Action Complaint against Old Dominion Freight Line, Inc. ("Defendant") for breaching its fiduciary duties of prudence in violation of the Employee Retirement Income Security Act, 29 U.S.C. §§1001–1461 ("ERISA").

### BRIEF OVERVIEW

1.      This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1109, and 1132, against Defendant for breaches of fiduciary duties.

2.      Defined contribution retirement plans, like the Plan, confer tax

benefits on participating employees to incentivize saving for retirement. According to the Investment Company Institute, Americans held $7.9 trillion in all employer-based defined contribution retirement plans as of March 31, 2020, of which $5.6 trillion was held in 401(k) plans. *See* INVESTMENT COMPANY INSTITUTE, *Retirement Assets Total $28.7 Trillion in First Quarter 2020* (June 17, 2020).

3.　　In a defined contribution plan, "'participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523 (2015).

4.　　Because all risks related to high fees and poorly performing investments are borne by the participants, the employer has little incentive to keep costs low or to closely monitor the Plan to ensure every investment remains prudent.

5.　　The Plan is a legal entity that can sue and be sued. *See* ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party. Rather, pursuant to ERISA § 409, and the case law interpreting it, the relief requested in this action is for the benefit of the Plan.

6.　　To safeguard Plan participants, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries. 29

U.S.C. § 1104(a)(1). These twin fiduciary duties are "the highest known to the law." *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 333 (3d Cir. 2019). Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. *See* 29 U.S.C. § 1104(a)(1)(B).

7. Because retirement savings in defined contribution plans grow and compound over the course of the employee participants' careers, excessive fees can dramatically reduce the benefits available when the participant is ready to retire. Over time, even small differences in fees can compound and result in a vast difference in the amount of savings available at retirement. As the Supreme Court has explained, "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

8. The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor ("DOL") has noted that a 1% higher level of fees over a 35-year period makes a 28% difference in retirement assets at the end of a participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, p. 2 (September 2019).

9. The Plaintiff is a Plan participant. As of December 31, 2021, the Plan

had $2,019,344,763 in assets and 24,033 total participants with account balances as of the end of the plan year. Defendant selected and retained for the Plan high priced investments when the identical investments were available to the Plan at a fraction of the cost. Defendant's imprudence caused the Plan and its participants to wrongfully lose roughly $3 million in retirement savings over the course of the relevant time period. Furthermore, unless this action moves forward, Plan participants will likely continue to wrongfully lose retirement savings to excessive fees and waste.

10.     Defendant's mismanagement of the Plan constitutes a breach of the fiduciary duty of prudence in violation of 29 U.S.C. § 1104. Defendant's actions were contrary to actions of a reasonable fiduciary and cost the Plan and its participants millions of dollars.

## JURISDICTION AND VENUE

11.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(2) and (3).

12.     This judicial District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because it is the district in which the Plan is administered, and where at least one of the alleged breaches took place.

Additionally, venue is proper in this District because Defendant is headquartered in Thomasville, North Carolina.

## THE PLAN

13.     The Plan is a qualified retirement plan commonly referred to as a 401(k) plan.

14.     The Plan is established and maintained under written documents in accordance with 29 U.S.C. §1102(a)(1).

15.     More specifically, the Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

16.     Eligible current and former employees of Defendant are eligible to participate in the Plan. During his employment, Plaintiff participated in the Plan, paying excessive recordkeeping and administrative costs associated with the Plan and investing in the imprudent investment options offered by the Plan, which are the subject of this lawsuit.

## THE PARTIES

17.     Plaintiff is a participant in the Plan under 29 U.S.C. §1002(7) because he and his beneficiaries are or may become eligible to receive benefits under the Plan.

18.     In terms of standing, §1132(a)(2) allows recovery for a "plan" and does not provide a remedy for individual injuries distinct from plan injuries. Here,

the Plan suffered millions of dollars in losses caused by Defendant's fiduciary breaches.

19.     The Plan continues suffering economic losses, and those injuries may be redressed by a judgment of this Court in favor of Plaintiff and the Plan. The Plan is the victim of any fiduciary breach and the recipient of any recovery.

20.     Section 1132(a)(2) authorizes any participant to sue derivatively as a representative of the plan to seek relief on behalf of the plan. 29 U.S.C. §1132(a)(2). As explained in detail below, the Plan suffered millions of dollars in losses caused by Defendant's fiduciary breaches and it remains exposed to harm and continued losses, and those injuries may be redressed by a judgment of this Court in favor of Plaintiff.

21.     To the extent the Plaintiff must also show an individual injury even though §1132(a)(2) does not provide redress for individual injuries, Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan and was injured and continues to be injured by Defendant's unlawful conduct.

22.     To establish standing, Plaintiff need only show a constitutionally adequate injury flowing from those decisions or failures.

23.     Defendant is the Plan Sponsor and a fiduciary of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because: (a) it is

a named fiduciary under the Plan, (b) during the Class Period, it exercised discretionary authority and control over Plan management and/or authority or control over management or disposition of Plan assets.

## THE PLAN

24.   Defendant established the Plan as a defined contribution plan in 1983.

25.   The Plan covers substantially all of Defendant's employees who are at least 18 years old and who complete three months of eligible employment service.

26.   Great-West Financial Retirement Plan Services, LLC, d/b/a Empower Financial ("Empower Financial") is the recordkeeper for the Plan. Empower Financial has been the recordkeeper during all relevant times.

27.   For the period ending December 31, 2016, the Plan had 13,499 participants and $674,320,493 in assets under management.

28.   For the period ending December 31, 2017, the Plan had 14,719 participants and $893,423,702 in assets under management.

29.   For the period ending December 31, 2018, the Plan had 17,754 participants and $903,729,176 in assets under management.

30.   For the period ending December 31, 2019, the Plan had 18,553 participants and $1,222,310,229 in assets under management.

31.    For the period ending December 31, 2020, the Plan had 19,086 participants and $1,442,002,388 in assets under management.

32.    For the period ending December 23, 2021, the Plan had 24,033 participants and $1,950,898,737 in assets under management.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following proposed class ("Class"):[1]

> All persons who were participants or beneficiaries of the Plan, at any time between November 18, 2016, and the present (the "Class Period").

34.    Members of the Class are so numerous that joinder is impractical. There are more than 24,000 Plan participants/putative Class members.

35.    Plaintiff's claims are typical of the claims of Class members. Plaintiff participated in the Plan and suffered injuries because of Defendant's ERISA fiduciary breaches. Defendant treated Plaintiff consistently with other Class members and managed the Plan as a single entity. Plaintiff's claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendant as alleged herein, and all Class members have been similarly affected by Defendant's wrongful conduct.

---

[1] Plaintiff reserves the right to propose other or additional classes or subclasses in his motion for class certification or subsequent pleadings in this action.

36. There are questions of law and fact common to the Class, and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A. Whether Defendant is fiduciary of the Plan;

B. Whether Defendant breached its fiduciary duty of prudence by engaging in the conduct described herein;

C. Whether Defendant failed to adequately monitor other fiduciaries to ensure the Plan was being managed in compliance with ERISA;

D. Whether Defendant caused the Plan to pay excessive fees for investments;

E. The proper form of equitable and injunctive relief; and

F. The proper measure of relief.

37. Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

38. This action may be properly certified under Fed. R. Civ. P. 23(b)(1). Class action status in this action is warranted under Fed. R. Civ. P. 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class

action status is also warranted under Fed. R. Civ. P. 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

39.    In the alternative, certification under Fed. R. Civ. P. 23(b)(2) is warranted because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## DEFENDANT'S FIDUCIARY STATUS AND OVERVIEW OF FIDUCIARY DUTIES

40.    ERISA requires every covered retirement plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

41.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent: "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercise any authority or control

respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

42.    As described above, Defendant was (and still is) a fiduciary of the Plan because it:

      A.      is so named; and/or

      B.      exercised authority or control respecting management or disposition of the Plan's assets; and/or

      C.      exercised discretionary authority or discretionary control respecting management of the Plan; and/or

      D.      had discretionary authority or discretionary responsibility in the administration of the Plan.

43.    As a fiduciary, Defendant is required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)(A), to manage and administer the Plan solely in the interest of the Plan's participants and beneficiaries, prudently defray costs of the Plan, and to do so with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims as the Plan. *Id.* These twin duties are referred to as the duties of

loyalty and prudence, and they are "the highest known to the law." *Sweda*, 923 F.3d at 333.

44.     As set forth in detail below, Defendant breached its fiduciary duties of prudence to the Plan, Plan participants, and Plan beneficiaries, and Defendant is therefore liable for its breaches under 29 U.S.C. §§ 1104, 1109, and 1132.

## EXCESSIVE INVESTMENT FEES

45.     "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obligated to minimize costs." Uniform Prudent Investor Act (the "UPIA") § 7; *see also* 29 U.S.C. § 1104(a)(1)(A) (requiring ERISA fiduciaries to "defray reasonable expenses of administering the plan.").

46.     "The Restatement … instructs that 'cost-conscious management is fundamental to prudence in the investment function.'" *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) (quoting Restatement (Third) of Trust § 90, cmt. b). *See also* U.S. Dep't of Labor, *A Look at 401(k) Plan Fees*, at 2 (Aug. 2013) ("You should be aware that your employer also has a specific obligation to consider the fees and expenses paid by your plan ... Employers are held to a high

standard of care and diligence and must discharge their duties solely in the interest of the plan participants and their beneficiaries.").[2]

47.     Higher fees of only 0.18% to 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees for materially identical funds lose not only the money spent on higher fees, but also 'lost investment opportunity'; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble*, 843 F.3d at 1198.

48.     Most participants in 401(k) plans expect that their 401(k) accounts will be their principal source of income after retirement. "The 401(k) is the major source people think they are going to rely on."[3] Although 401(k) accounts are fully funded, that does not prevent plan participants from losing money on poor investment choices of plan fiduciaries, whether due to poor performance, high fees, or both.

49.     Indeed, the DOL has stated that employers are held to a "high standard of care and diligence" and must both "establish a prudent process for selecting investment options and service providers" and "monitor investment

---

[2] Available at: https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited November 9, 2022).
[3] Brandon, Emily, "10 Essential Sources of Retirement Income," (May 6, 2011), available at: https://money.usnews.com/money/retirement/slideshows/10-essential-sources-of-retirement-income (last visited November 9, 2022).

options and service providers once selected to see that they continue to be appropriate choices," among other duties. *See* "A Look at 401(k) Plan Fees," *supra*.

50.     The duty to evaluate and monitor plan expenses, investments and investment costs, includes fees paid directly by plan participants to investment providers, usually in the form of an expense ratio or a percentage of assets under management within a particular investment. *See* Investment Company Institute ("ICI"), *The Economics of Providing 401(k) Plans: Services, Fees, and Expenses*, at 4 (July 2016).[4] "Any costs not paid by the employer, which may include administrative, investment, legal, and compliance costs, effectively are paid by plan participants." *Id.* at 5.

51.     The Supreme Court reaffirmed the ongoing fiduciary duty to monitor a plan's investment options in *Tibble*, 575 U.S. 523. In *Tibble*, the Court held that "an ERISA fiduciary's duty is derived from the common law of trusts," and that "[u]nder trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones." *Id.* at 1828. In so holding, the Supreme Court referenced with approval the Uniform Prudent Investor Act ("UPIA"), treatises, and seminal decisions confirming the duty.

52.     The UPIA, which enshrines trust law, recognizes that "the duty of

---

[4] Available at: https://www.ici.org/pdf/per22-04.pdf (last visited November 9, 2022).

prudent investing applies both to investing and managing trust assets...." *Tibble*, 575 U.S. 523 (quoting Nat'l Conference of Comm'rs on Uniform State Laws, Uniform Prudent Investor Act § 2(c) (1994)). The official comment explains that "'[m]anaging embraces monitoring, that is, the trustee's continuing responsibility for oversight of the suitability of investments already made as well as the trustee's decisions respecting new investments." *Id*. § 2 comment.

53.     Under trust law, one of the responsibilities of the Plan's fiduciaries is to "avoid unwarranted costs" by being aware of the "availability and continuing emergence" of alternative investments that may have "significantly different costs." Restatement (Third) of Trusts Ch. 17, intro. note (2007); *see also* Restatement (Third) of Trusts § 90 cmt. B (2007) ("Cost-conscious management is fundamental to prudence in the investment function.").

54.     Adherence to these duties requires regular performance of an "adequate investigation" of existing investments in a plan to determine whether any of the plan's investments are "improvident," or if there is a "superior alternative investment" to any of the plan's holdings. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013).

55.     Defendant failed to prudently monitor and select proper share classes of eleven (11) investments offered by the Plan. Investment companies offer

pricing discounts to retirement plans. The discounts are offered mainly because investment companies recognize that trillions of dollars are invested through retirement plans and they want their investments to be offered by retirement plans, so they offer pricing discounts to retirement plans. The discounts are typically referenced by what is known as "share classes." The "retail" share class of an investment charges a higher price than a "retirement plan" share class. But in all other material aspects, the underlying investment is the same. Here, Defendant selected more expensive share classes than identical less expensive share classes of the same investments. Except for the extra fees, the share classes are/were identical. Defendant imprudently wasted roughly $3 million of Plan assets – retirement savings – by selecting the wrong share classes for the Plan.

56.     By causing Plan participants to pay more for identical investments, Defendant failed in its statutory ERISA duty to prudently defray costs of the Plan. The chart below demonstrates how much more expensive the share classes in the Plan are than available identical fund better-priced share classes:

| Fund in Plan | Expense Ratio | Lower Cost Share Class of <u>Same Fund</u> | Expense Ratio |
|---|---|---|---|
| JPMorgan Smart Retirement – 2020 Fund R5 (JTTIX) | **0.50%** | JPMorgan Smart Retirement – 2020 Fund R6 (JTTYX) | **0.40%** |
| JPMorgan Smart Retirement – 2025 Fund R5 (JNSIX) | **.51%** | JPMorgan Smart Retirement – 2025 Fund R6 (JNSYX) | **0.41%** |

| Fund in Plan | Expense Ratio | Lower Cost Share Class of <u>Same Fund</u> | Expense Ratio |
|---|---|---|---|
| JPMorgan Smart Retirement – 2030 Fund R5 (JSMIX) | 0.52% | JPMorgan Smart Retirement – 2030 Fund R6 (JSMYX) | 0.42% |
| JPMorgan Smart Retirement – 2035 Fund R5 (SRJIX) | 0.54% | JPMorgan Smart Retirement – 2035 Fund R6 (SRJYX) | 0.44% |
| JPMorgan Smart Retirement – 2040 Fund R5 (SMTIX) | 0.55% | JPMorgan Smart Retirement – 2040 Fund R6 (SMTYX) | 0.45% |
| JPMorgan Smart Retirement – 2045 Fund R5 (JSAIX) | 0.55% | JPMorgan Smart Retirement – 2045 Fund R6 (JSAYX) | 0.456% |
| JPMorgan Smart Retirement – 2050 Fund R5 (JTSIX) | 0.55% | JPMorgan Smart Retirement – 2050 Fund R6 (JTSYX) | 0.45% |
| JPMorgan Smart Retirement – 2055 Fund R5 (JFFIX) | 0.55% | JPMorgan Smart Retirement – 2055 Fund R6 (JFFYX) | 0.45% |
| JPMorgan Smart Retirement – 2060 Fund R5 (JAKIX | 0.54% | JPMorgan Smart Retirement – 2060 Fund R6 (JAKYX) | 0.44% |
| Russell US Small Cap Equity S RLESX | 0.96% | Russell US Small Cap Equity R6 (RSCRX) | 0.83% |
| American Funds Europacific Growth R5 (RERFX) | 0.51% | American Funds Europacific Growth R6 (RERGX) | 0.46% |

57.     As of December 31, 2021, Plan participants had nearly $500,000,000

(five hundred million dollars) invested in the above identified imprudent share

classes.

58. Defendant should have known of the existence and availability of lower-cost share classes. Yet, Defendant selected and retained the more expensive share classes on the Plan's menu of investment options. This is akin to an investment provider publicly offering all prudent fiduciaries the option to purchase an investment for $1 and a fiduciary instead agreeing to purchase three million quantities of the investment for $2. The imprudence results in millions of dollars in losses.

59. A prudent fiduciary conducting an impartial review of the Plan's investments would have identified the prudent share classes available and selected those for the Plan instead of the identical but higher-priced investments.

60. There is no good-faith explanation for selecting and retaining the higher-priced and poorly performing share classes when the lower-priced and better performing share classes are/were available. The Plan did not receive any additional services or benefits based on its stagnate continuation of the more expensive share classes. The only difference between the two was a higher price and lower returns.

61. To make matters worse for Defendant, JP Morgan offers virtually the same funds identified in Paragraph 56, except instead of being "actively" managed funds the funds are managed with "blend" of active at passive management techniques. JP Morgan touts that its "JP Morgan SmartRetirement

Passive Blend Fund is designed to care for all the assets you have in your employer's retirement plan….Best of all your fund will be fully diversified, adjusted, and managed for you." While the JP Morgan funds in the Plan charge roughly 55 basis points to Plan participants – the JP Morgan SmartRetirement Passive Blend Funds charge on average 20 basis points. And the JP Morgan SmartRetirement Passive Blend Funds out-perform the JP Morgan funds in the Plan. Defendant should have anticipated such underperformance given the wealth of data showing that actively managed funds do not outperform their passively managed counterparts.

62. Defendant failed to undertake any analysis when it selected and retained the actively managed funds (at imprudent share classes) discussed above. Defendant provided these fund options without conducting a prudent analysis despite the acceptance within the investment industry that active managers typically do not outperform passive managers net of fees over the long-term. And worse yet, for Defendant, the JP Morgan SmartRetirement Passive Blend Funds are actively managed but priced as passively managed funds. Defendant's imprudence and failure to select the proper funds from JP Morgan resulted in another $3 million of damages during the Class period.

Case 1:22-cv-00990   Document 1   Filed 11/18/22   Page 19 of 25

## FIRST CLAIM FOR RELIEF
### *Breach of Fiduciary Duty of Prudence*

63.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

64.     As a fiduciary of the Plan, Defendant is/was subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

65.     Defendant breached its fiduciary duties by selecting and retaining imprudent share classes and investments for the Plan.

66.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses. Had Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

67.     Pursuant to 29 U.S.C. § 1109(a) and 1132(a)(2), Defendant is liable to restore to the Plan all losses caused by its breaches of fiduciary duties and must restore any profits resulting from such breaches. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendant's breaches as set forth in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF
### *Failure to Adequately Monitor Other Fiduciaries*

132.   Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint as if fully set forth herein.

133.    Defendant is the Plan Sponsor, as defined by ERISA. Defendant had the authority and obligation to monitor all other fiduciaries for the Plan. Defendant's Board of Directors appointed individuals to serve on the Retirement Committee ("Committee") to serve as fiduciaries of the Plan and at the discretion of Defendant's Board of Directors. Defendant and its Board of Directors were aware that the Committee had critical responsibilities as a fiduciary of the Plan.

134.    Defendant, as Plan Sponsor, had a duty to monitor the Committee and ensure that the Committee was adequately performing its fiduciary obligations, and to take prompt and effective action to protect the Plan if the Committee was not fulfilling those duties.

135.    Defendant also had a duty to ensure that the Committee possessed the needed qualifications and experience to carry out its duties; had adequate financial resources and information; maintained adequate records of the information on which it based its decisions and analysis with respect to the Plan's investments; and reported regularly to Defendant.

136.    Defendant breached its fiduciary monitoring duties by, among other things:

    (a)    Failing to monitor and evaluate the performance of the Committee or have a system in place for doing so, and standing idly by as

the Plan suffered significant losses because of the Committee's imprudent actions and omissions;

(b)    failing to monitor the processes by which the Plan's expenses and investments were evaluated; and

(c)    failing to remove the Committee as a fiduciary whose performance was inadequate in that it continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and the retirement savings of the Plan's participants.

137.    Because of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars in losses. Had Defendant complied with its fiduciary obligations, the Plan would not have suffered these losses, and participants of the Plan would have had more money available to them for their retirement.

138.    Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendant is liable to restore to the Plan all losses caused by its failure to adequately monitor the Committee. In addition, Plaintiff is entitled to equitable relief and other appropriate relief as set forth in his Prayer for Relief.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

1.     Find and declare that the Defendant breached its fiduciary duties as described above;

2.     Find and adjudge that Defendant personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

3.     Determine the method by which Plan losses under 29 U.S.C. §1109(a) should be calculated;

4.     Order Defendant to provide all accountings necessary to determine the amounts Defendant must make good to the Plan under §1109(a);

5.     Remove fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

6.     Surcharge against Defendant and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

7.     Reform the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses;

8.     Certify the Class, appoint the Plaintiff as class representative, and appoint her counsel as Class Counsel;

9.     Award to the Plaintiff and the Class their attorney's fees and costs

under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

10. Order the payment of interest to the extent it is allowed by law; and

11. Grant other equitable or remedial relief as the Court deems appropriate.

This, the 18th day of November, 2022.

Respectfully submitted,

/s/ *Matthew Norris J.*
**MATTHEW NORRIS J.**
NC Bar No. 37206
**NORRIS LAW FIRM, PLLC**
1776 Heritage Center Drive, Suite 204
Wake Forest, NC 27687
Telephone: (919) 981-4475
Facsimile: (919) 926-1676
Email: matt@lemonlawnc.com

**BRANDON J. HILL** (*special appearance*)
Florida Bar Number: 37061
**LUIS A. CABASSA** (*special appearance*)
Florida Bar Number: 0053643
**AMANDA E. HEYSTEK** (*special appearance*)
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Telephone: (813) 337-7992
Facsimile: (813) 229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

**MICHAEL C. MCKAY** (*special appearance*)

**MCKAY LAW, LLC**
Arizona Bar No. 023354
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mmckay@mckaylaw.us

**MARC R. EDELMAN** (*special appearance*)
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: MEdelman@forthepeople.com

*Attorneys for Plaintiff and the proposed Class*