IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| HARVEY L. DAVIS, on behalf of )<br>The Old Dominion 401(k) Retirement )<br>Plan, individually, and on behalf )<br>Of all others similar situated, )<br>  )<br>  Plaintiff, )<br>  )<br>  v. )<br>  )<br>OLD DOMINION FREIGHT LINE, INC., )<br>  )<br>  Defendant. ) | 1:22CV990 |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This dispute arises from alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Before the court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant Old Dominion Freight Line, Inc. ("Old Dominion"). (Doc. 14.) Plaintiff Harvey L. Davis responded in opposition (Doc. 20), and Old Dominion replied (Doc. 21). For the reasons set forth below, the court will grant Old Dominion's motion to dismiss on the ground that Davis lacks standing.

I.  **BACKGROUND**

Davis brought this action against Old Dominion on behalf of the Old Dominion 401(k) Retirement Plan on November 18, 2022. (Doc. 1.) The facts set forth below are based on the well-pleaded allegations of the complaint, which are accepted as true for the

purposes of this motion to dismiss and viewed in the light most favorable to Davis as the non-moving party.

Davis is a former employee of Old Dominion (see id. ¶ 16; Doc. 15 at 2) and is among a group of eligible current and former employees who participate in Old Dominion's 401(k) retirement plan (the "Plan") (Doc. 1 ¶¶ 13, 16). The Plan is a defined contribution plan, where individual plan participants recoup value in proportion to the amount they individually invest. (Id. ¶¶ 3, 15.) "[A]ll of [Old Dominion's] employees who are at least 18 years old and who complete three months of eligible employment service" may participate. (Id. ¶ 25.) As of December 23, 2021, "the Plan had 24,033 participants and $1,950,898,737 in assets under management." (Id. ¶ 32.)

ERISA regulates the management of retirement plans such as the Plan here. Davis alleges that Old Dominion is a fiduciary of the Plan and is thus required by ERISA to fulfill certain fiduciary obligations, including "a continuing duty to monitor trust investments and remove imprudent ones." (Id. ¶ 51 (quoting Tibble v. Edison Int'l, 575 U.S. 523, 529); see id. ¶¶ 49-50, 52-54.) Davis alleges that Old Dominion breached its fiduciary duties to the Plan by pursuing "high priced investments when the identical investments were available to the Plan at a fraction of the cost." (Id. ¶ 9; see id. ¶¶ 44, 55-62.) These more expensive share classes offered the Plan no "additional services or benefits" such

2

that there was "no good-faith explanation for selecting and retaining the higher-priced and poorly performing share classes." (Id. ¶ 60.)  This imprudence in investment led to a loss of $3 million to "the Plan and its participants" during "the relevant time period."[1]  (Id. ¶ 9; see id. ¶¶ 18-20 (alleging that "the Plan suffered millions of dollars in losses caused by [Old Dominion's] fiduciary breaches" and that it "continues suffering economic losses").)

Further, Davis alleges that Old Dominion imprudently offered "'actively' managed funds" rather than those "managed with [a] 'blend' of active [and] passive management techniques" even though the actively managed funds charged more in fees and underperformed the latter funds.  (Id. ¶ 61.)  Davis lists eleven specific share classes he alleges Old Dominion offered as higher-priced, actively-managed funds, comparing each with its lower-priced, blended-management alternative.  (Id. ¶ 56.)  Old Dominion's "fail[ure] to undertake any analysis" before making its selections led to these unwise choices and the Plan's substantial economic losses.  (Id. ¶ 62.)

Davis likewise alleges that Old Dominion, as the "Plan Sponsor," breached its "obligation to monitor all other fiduciaries for the Plan" (id. ¶ 133), causing the Plan and its

---

[1] Davis alleges that injuries began on November 18, 2016, and extend to the present.  (Id. ¶ 33.)

participants millions of dollars in losses (id. ¶¶ 136-37).

As to his connection to these facts, Davis alleges that he was injured by Old Dominion's mismanagement of the Plan, "paying excessive recordkeeping and administrative costs associated with the Plan and investing in the imprudent investment options offered by the Plan, which are the subject of this lawsuit." (Id. ¶ 16.) But he provides no factual allegation of what those costs and investments were. Instead, on its face, the complaint contains no factual support for the conclusory allegations that he personally invested in any of the imprudent investment options, nor that he suffered any other type of specific financial loss.

Davis brings two causes of action against Old Dominion, relying on these allegations: the first for breach of fiduciary duty of prudence (id. ¶¶ 63-67), and the second for failure to adequately monitor other fiduciaries (id. at ¶¶ 132-138). He seeks various types of relief, including reforms to the Plan, compensatory damages for losses, attorney's fees and costs, and such "equitable and remedial relief as the Court deems appropriate." (Id. at 23-24.) Furthermore, he asserts these claims for recovery on behalf of the Plan and its participants as an entity, rather than as an individual. Davis accordingly contends that this action is appropriate for class certification because "joinder is impractical" given the number of possible plaintiffs (id. ¶ 34), because his "claims are typical of the

4

claims of Class members" (id. ¶ 35), and because "there are questions of law and fact common to the Class, [which] . . . predominate over questions affecting only individual Class members" (id. ¶ 36).

Old Dominion now moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 14.) The motion is fully briefed and ready for decision.

**II. ANALYSIS**

Old Dominion's motion urges two possible grounds for dismissal: lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, failure to state a claim pursuant to Rule 12(b)(6). (Doc. 14.) As the following analysis explains, Davis has not demonstrated Article III standing to bring this case. The court therefore lacks the requisite subject matter jurisdiction to proceed and will dismiss the complaint without prejudice on that ground.

**A. Legal Standard**

Federal district courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). "'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (quoting Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006)). For a case or

5

controversy to be justiciable in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). Given the importance of this requirement, "a federal court can inquire into standing at any stage of a case, and if it finds the plaintiff lacks standing, it may dismiss the case." Goldstein v. Costco Wholesale Corp., 278 F. Supp. 2d 766, 769 (E.D. Va. 2003) (citing Marcus Cable Assocs. V. City of Bristol, 237 F. Supp. 2d 675, 677 n.2 (W.D. Va. 2002)).

The party seeking to invoke a federal court's jurisdiction has the burden of satisfying Article III's standing requirement. Miller, 462 F.3d at 316. To meet that burden, a plaintiff must demonstrate three elements: (1) that he has suffered an injury in fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged conduct; and (3) that a favorable decision is likely to redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The Supreme Court "ha[s] consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." Raines v. Byrd, 521 U.S. 811, 819

6

(1997) (citing Lujan, 504 U.S. at 560-61 and n.1).

In addition, "[w]hen a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction," the court is not limited to considering only allegations made in the well-pleaded complaint as it normally would be on a motion to dismiss. White Tail Park, Inc., 413 F.3d at 459. Instead, "the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Id. (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)); see Moore v. Va. Cmty. Bankshares, Inc., No. 3:19-cv-45, 2023 WL 2714930, at *3 (2023) ("[C]ourts may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists." (quoting Saval v. BL Ltd., 710 F.2d 1027, 1029 n.2 (4th Cir. 1983))).

**B.   Standing**

Old Dominion challenges the court's subject matter jurisdiction on the basis that Davis lacks standing to sue on behalf of the class because he did not suffer an individual injury. (Doc. 15 at 14-16.) It maintains that Davis's complaint nowhere alleges that he "sustained injury to his own account" because of Old Dominion's actions. (Id. at 16.) Old Dominion notes that Davis fails to assert that he invested in "any of the eleven challenged funds, or even in any actively managed funds." (Id. at

7

15.) It further offers evidence that Davis did not invest in any of these funds but rather "invested solely in the Plan's stable value funds" which are not the subject of his challenge. (Id.) Old Dominion concludes that Davis's individual account "will not fluctuate one cent whether he wins or loses this case," and so he has "no concrete stake in this lawsuit." (Id. at 16.)

In response, Davis argues that "participants in defined-contribution plans suffer an injury-in-fact sufficient for Article III standing when alleging that a fiduciary's breach has negatively impacted their accounts," which he argues he has faced here. (Doc. 20 at 25 (citing In re Mut. Funds Inv. Litig., 529 F.3d 207, 216 (4th Cir. 2008)).) Davis points to a recent case in which a district court found that plaintiffs had standing when they "allege[d] injury to their individual 401(k) accounts in the form of excessive record-keeping and administrative costs as well as an expensive overall investment menu endured by each Plan participant." (Id. at 25-26 (quoting Jones v. Coca-Cola Consol., Inc., No. 3:20-cv-00654-FDW-DSC, 2021 WL 1226551, at *4 (W.D.N.C. Mar. 31, 2021)).) There, the court found that "if the plaintiffs' allegations are true, they suffered injury in that their retirement accounts [are] worth less [than] they would have been absent the breach[s]." (Id. at 26 (quoting Jones, 2021 WL 1226551, at *4 (some alterations added) (citations omitted)).) Davis accordingly claims that his "[c]omplaint is freighted with allegations" that

8

he suffered just such injuries and therefore has standing before this court. (Id.)

In turn, Old Dominion responds that "nowhere does Davis allege that [it] committed a plan-wide breach impacting his individual account," nor does he "allege that every fund in the Plan's investment menu . . . was in the wrong share class." (Doc. 21 at 9.) It asserts that "[t]he only substantive allegation the Complaint makes is that the Committee imprudently offered [certain funds] in the R-5 share class instead of the R-6 share class" (id. at 6) and that Davis "does not dispute that he never invested in any of the eleven challenged funds" (id. at 7).

As a preliminary matter, the court must address the disparity between the complaint filed with the court and the one Davis appears to cite throughout his most recent briefing. As Old Dominion notes, while Davis claims that the "[c]omplaint is 38 pages long and contains 138 separate paragraphs" (Doc. 20 at 11), the complaint filed on the docket is only 25 pages long and contains paragraphs numbered 1 through 67 and 132 through 138 (74 total paragraphs) (see Doc. 1). Old Dominion's characterization that Davis's subsequent briefing refers to "phantom paragraphs" is apt, as Davis's response to the motion to dismiss oddly and repeatedly cites to paragraphs that simply do not appear in the complaint on the docket.

Davis chides Old Dominion for ignoring various of his

9

allegations (Doc. 20 at 11, 17, 19, 26, 27) and asserts that the "[c]omplaint's allegations are not limited to imprudence and losses stemming from investments as Defendant argues" (id. at 26). However, not only does the complaint not contain "detailed allegations" regarding excessive compensation received by the Plan's recordkeeper as argued by Davis (id. at 17), the terms "excessive compensation," "float compensation," "direct fee compensation," and "revenue sharing compensation" relied on by Davis do not appear at any point in the complaint.[2] Davis makes a passing allegation that he "pa[id] excessive recordkeeping and administrative costs associated with the Plan" (Doc. 1 ¶ 16), and his prayer for relief includes a request to "[r]eform the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses" (id. at 23). Nowhere, however, does Davis allege that Old Dominion "imprudently caused the Plan's recordkeeper . . . to receive millions of dollars of excessive compensation from the Plan." (Doc. 20 at 17.) Thus, the court will confine its analysis of standing to the actual contents of the complaint and Davis's responsive arguments that pertain to the complaint's allegations concerning imprudent investments on the Plan menu and excessive fees related to those investments. See

---

[2] The word "compensation" appears once, in ERISA's definition of fiduciary, and the word "recordkeeper" appears only where the complaint names the Plan's recordkeeper. (Doc. 1 ¶¶ 26, 41.)

10

Raines, 521 U.S. at 818 ("One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue." (citing Lujan, 504 U.S. at 561) (emphasis added)); see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 110-11 (2d Cir. 2008) (finding that plaintiff lacked standing in part because the claimed injuries to itself were raised "in its briefs, but not in its complaint").

Although ERISA, 88 Stat. 829 § 502(a)(2), 29 U.S.C. § 1132(a)(2), "does not provide a remedy for individual injuries distinct from plan injuries," it does authorize a participant to bring a civil action seeking relief for breaches of fiduciary duty as outlined in § 1109.[3] LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 256 (2008) (finding that the "provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"). Davis asserts that he has standing to sue on behalf of the Plan to seek redress for the injury Old Dominion has caused it in the form of "millions of dollars in losses caused by Defendant's fiduciary breach" and ongoing "expos[ure] to harm and continued losses." (Doc. 1 ¶ 20.) Davis further states he has shown an individual injury "because he

---

[3] Old Dominion does not dispute that Davis has statutory standing, as a participant in the Plan, to bring this action pursuant to § 1132(a)(2).

11

participated in the Plan and was injured and continues to be injured by Defendant's unlawful conduct." (Id. ¶ 21.)

"There is no ERISA exception to Article III." Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1622 (2020). The Supreme Court "has rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. at 1620. Likewise, "Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1620-21 (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016)).

The Supreme Court and appellate courts have drawn a distinction between defined benefit plans and defined contribution plans in the context of finding an individual injury that satisfies Article III standing pursuant to ERISA. With defined benefit plans, the Supreme Court has held that plan participants do not have standing to sue for plan-wide fiduciary mismanagement unless "the mismanagement of the plan was so egregious that it substantially increased the risk that the plan . . . would fail" entirely since "retirees receive a fixed payment each month" that "do[es] not fluctuate . . . because of the plan fiduciaries' good or bad investment decisions." Id. at 1621, 1618. The same limitation does not apply to defined contribution plans, where "fiduciary misconduct need not threaten the solvency of the entire

12

plan to reduce benefits below the amount that participants would otherwise receive." LaRue, 552 U.S. at 255-56 (emphasis added). Instead, participants in defined contribution plans retain an individual equitable interest in the plan and may sue for enforcement of that interest. See Thole, 140 S. Ct. at 1619-20 (citing LaRue, 552 U.S. at 254-56) (suggesting that participants in defined contribution plans are somewhat akin to beneficiaries of private trusts). Thus, while ERISA "does not provide a remedy for individual injuries distinct from plan injuries, [it] does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." LaRue, 552 U.S. at 256.

Similarly, the Fourth Circuit has held that participants in a defined contribution plan have standing pursuant to ERISA to "seek to recover amounts that they claim should have been in their accounts had it not been for alleged fiduciary impropriety," even when those participants had "cashed out" their benefits. Mut. Funds Inv. Litig., 529 F.3d at 210. While the court's analysis focused on plaintiffs' statutory standing, it determined that plaintiffs also needed to have personally "suffered an injury that could be redressed by the court" in order to have constitutional standing to bring their ERISA claims. Id. at 219. According to the court, the plaintiffs had constitutional standing because "the defendants breached fiduciary obligations imposed by ERISA . . .

13

and those breaches had an adverse impact on the value of the plan assets in the plaintiffs' individual accounts." Id. It was only by virtue of the individual injuries plaintiffs' accounts sustained due to the alleged breach of fiduciary duties, however, that the court was able to proceed. See id. at 215 ("[I]f the plaintiff colorably claims that under the plan and ERISA he was entitled to more than he received on the day he cashed out, then he . . . must be accorded participant standing." (citation omitted)).[4]

Here, Old Dominion has met its burden of showing that Davis was not individually harmed and therefore lacks standing on the face of the complaint to proceed in this case. A review of the records offered by Old Dominion, which may be considered at this stage given the jurisdictional nature of this issue, supports its claim that Davis did not, in fact, invest in any of the challenged funds. Old Dominion has attached Davis's account statements from the years at issue (Docs. 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, 15-

---

[4] The Fourth Circuit has held that when pursuing certain forms of equitable relief, plaintiffs may not need to allege specific financial loss. See Peters v. Aetna Inc., 2 F.4th 199, 219-21 (2021) (holding that plaintiffs had standing to bring claims for surcharge, disgorgement, and declaratory and injunctive relief even in the absence of any aggregate financial loss, which would be necessary for standing to recover compensatory damages). But even in such instances, plaintiffs must have another cognizable individual injury to have standing. Namely, plaintiffs must show that the defendants either breached a fiduciary duty toward them individually or that defendants were unjustly enriched by plaintiffs' activities. See id.

14

8) which show that Davis invested in only three funds,[5] none of which was included in the complaint's list of eleven challenged funds.

Nor does Davis ever dispute Old Dominion's showing on this issue. Davis acknowledges that he must allege an individual injury in order to bring this action, reciting the Fourth Circuit holding that "participants in defined-contribution plans suffer an injury-in-fact sufficient for Article III standing when alleging that a fiduciary's breach <u>has negatively impacted their accounts</u>." (Doc. 20 at 25 (citing <u>Mut. Funds Inv. Litig.</u>, 529 F.3d at 216) (emphasis added).) And his complaint asserts that he "participated in the Plan, paying excessive recordkeeping and administrative costs associated with the Plan and investing in the imprudent investment options offered by the Plan, which are the subject of this lawsuit." (Doc. 1 ¶ 16.) But there is no factual reference to Davis's own investment choices or the fees he was paying, focusing rather on allegations of generalized injury to the Plan as a basis for individual standing. (<u>See, e.g.</u>, <u>id.</u> ¶ 21 ("Plaintiff has standing to bring this action on behalf of the Plan because he participated in the Plan and was injured and continues to be injured by Defendant's unlawful conduct.").) Indeed, neither the

---

[5] The records show that from 2016 through 2022, Davis selected JPMCB Stable Asset Income Fund-G (Doc. 15-2 at 1-2), Great-West Select Guaranteed Fund (Docs. 15-3 at 1-2, 15-4 at 1-2, 15-5 at 1-2, 15-6 at 1-2, 15-7 at 1-2), and E I Fixed Account – Series Class V (Doc. 15-8 at 1-2).

15

complaint nor Davis's response brief further asserts that he invested in the challenged funds, and he neither demonstrates nor even claims that his own retirement account was harmed by the alleged imprudent investment options. The only injury on which Davis appears to hang his individual standing claim, "allowing Empower Financial to collect excessive compensation from Plaintiff," is not alleged in the complaint. (Doc. 20 at 27.) His complaint also lacks allegations that might indicate unjust compensation resulting from various fee structures attendant to the alleged Plan mismanagement, leaving him with no individual injury on which to rest his claim.

Davis concedes that Old Dominion's argument as to standing "might have merit if Plaintiff had brought a specific count of imprudence pertaining to investments only." (Id.) Davis asserts that "such a count does not exist" (id.), but that is precisely what his complaint alleges (Doc. 1 ¶ 63-67 ("First Claim for Relief") (alleging that "Defendant breached its fiduciary duties by selecting and retaining imprudent share classes and investments for the Plan" (emphasis added))). Without any plausible allegations indicating that Davis's own retirement account was injured by Old Dominion's alleged breach of fiduciary duty of prudence and failure to adequately monitor other fiduciaries, Davis has not met his burden of showing that he has suffered an injury-in-fact. Thus, he lacks Article III standing to pursue his

16

claim.

Having found it lacks subject matter jurisdiction over Davis's claim, the court need not consider Old Dominion's motion to dismiss pursuant to Rule 12(b)(6).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Old Dominion's motion to dismiss for lack of subject matter jurisdiction (Doc. 14) is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE.

    /s/   Thomas D. Schroeder
United States District Judge

September 6, 2023